**John HENNING and Bridget Henning, Appellants,**

v.

**James DANIELS, Jr., Glenn Daniels, and Colonial Sales and Service, Inc., Appellees.**

No. 80–1539.

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1981.

Decided June 22, 1981.

John Levy, Richmond, Va. (David B. Kirby, Legal Intern, Peninsula Legal Aid Center, Inc., on brief), for appellants.

G. Mark Ailsworth, Newport News, Va., (Hall, Fox & Atlee, P.C., Newport News, Va., on brief), for appellees.

Before HAYNSWORTH, Senior Circuit Judge, and BUTZNER and ERVIN, Circuit Judges.

PER CURIAM:

John and Bridget Henning appeal an adverse judgment of the district court in this suit brought under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, (the Act) and 12 C.F.R. § 226.1 et seq. (1980) (Regulation Z). We affirm.

I.

In April 1979, John and Bridget Henning purchased a mobile home from Colonial Sales and Service, Inc. (Colonial); James Daniels negotiated the transaction with the Hennings in his capacity as Colonial's president. In connection with the sale, the Hennings signed a "Customer's Order and Contract to Purchase" (Customer's Order) and executed a "Security Agreement" for financing both the home and comprehensive fire and theft insurance. In October 1979, the Hennings filed this action, alleging that certain provisions of the Truth in Lending Act and Regulation Z had been violated in the course of the mobile home sales transaction.

The Hennings, in their original complaint, specifically alleged two violations of the Act: the absence of a subsection "(b)" under numeral "4" in the Security Agreement and Daniels' failure to check the appropriate box on the Security Agreement for

comprehensive insurance coverage.[1] They later amended their complaint to allege in the alternative that various errors in the Customer's Order constituted violations of the Act.

## II.

Certain disclosures that must be made in connection with consumer credit sales not under open end credit plans are enumerated in 15 U.S.C. § 1638(a)(1)–(3), (5)–(10). Section 1638(a)(4) additionally requires the disclosure of "[a]ll other charges, individually itemized, which are included in the amount of the credit extended but which are not part of the finance charge." The disclosures required by this section "shall be made before the credit is extended, and may be made by disclosing the information in the contract or other evidence of indebtedness to be signed by the purchaser." 15 U.S.C. § 1638(b). A creditor who violates the disclosure provisions of the Act is liable for twice the amount of the finance charge in connection with the transaction (between the limits of $100 and $1000) as well as for court costs and attorneys' fees. 15 U.S.C. § 1640(a). A creditor may successfully defend a suit under the Act, however, if he "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1640(c).

### A. The disclosure document

Although the Hennings contend that the Customer's Order rather than the Security Agreement was the document on which the required disclosures should have been made, we disagree. The Customer's Order was used as Colonial's financing document prior to passage of the Act, and Daniels testified that at the time of this transaction it was used only as a worksheet: figures and information were first entered on the Customer's Order and then transferred to the Security Agreement. Daniels testified that the two documents were executed simultaneously, that the Security Agreement was the operative financing document, and that

---

1. The pertinent section of the Security Agreement is in this form:

```
(4)  INSURANCE PREMIUMS AND OTHER CHARGES

     (No Insurance Coverage Unless Premium Shown
        and Box Checked)

     (a)  Credit Insurance (Term:----------Months)

          Credit Life Amount $_____    [ ]        $_____
          Credit Accident &
             Health                       [ ]        $_____

          Thru Creditor (Term: 36 Months)            $684.00

          Comprehensive                   [ ]
          or Fire and Theft and
          Combined Additional Coverage    [ ]

          Personal Effects:
          Fire, Lightning & Transp.       [ ]
          Vendor's Single Interest        [ ]

     (c)  Certificate of Title Fees                   $  7.00

     (d)  Registration Fees                           $_____

     (e)  Official Fees (other than c and d)          $_____

     (f)                                              $_____

          TOTAL OF ITEM (4)                           $691.00
```

had the Hennings failed to execute the Security Agreement, he would have considered the entire transaction cancelled. He further testified that he explained to the Hennings that the Security Agreement was the contract for the extension of credit and that he went over it with them, explaining the data it contained.[2]

■ The Act requires that all disclosures be made prior to the extension of credit and we find that the extension of credit in this case took place upon the execution of the Security Agreement; hence, we look at the errors alleged in that document, rather than those in the Customer's Order, to determine whether Colonial violated the Act.

### B. *The alleged violations*

We turn next to the Hennings' contentions that the omissions on the Security Agreement constituted violations of the Act.

■ With respect to the omission of the lower case letter indicating "(b)," we find that no violation occurred. We agree with the district court that, despite the omission, the required disclosures were made "clearly, conspicuously [and] in meaningful sequence." 12 C.F.R. § 226.6 (1980).

■ With respect to Daniels' failure to check the appropriate insurance box even though he filled in the correct financial information, we can assume without deciding that this was a technical violation. We do so because we find that Colonial is in this regard entitled to the bona fide error defense of 15 U.S.C. § 1640(c). Daniels testified that his failure to check the box was an oversight on his part, although he followed his normal practice of proofreading the Security Agreement prior to its execution. Without commenting on whether this procedure would suffice under other circumstances to afford the bona fide error defense, we find that Daniels' procedure of proofreading the Security Agreement was one "reasonably adapted to avoid" the sort of error with which we are here concerned. *See, e. g., Thomka v. A.Z. Chevrolet, Inc.,*

619 F.2d 246, 250–51 (3d Cir. 1980); *Gallegos v. Stokes,* 593 F.2d 372, 376 (10th Cir. 1979).

We accordingly affirm the district court's entry of judgment against the Hennings.

*AFFIRMED.*

**2.** Daniels' testimony was uncontroverted, as the Hennings did not testify.