803 P.2d 900

**WELLS FARGO CREDIT CORPORATION, an Arizona Corporation, Justice Mortgage Company, Inc., an Arizona Corporation, Plaintiffs, Counter-defendants, Third Party Defendants–Appellees,**

v.

**Harold N. and Barbara Elaine SMITH, husband and wife, Defendants, Counter-claimants, Third Party Plaintiffs–Appellants,**

and

**Michael Simonson and Jeffrey Arbetman, dba Simonson and Arbetman, Appellants.**

**No. 1 CA–CIV 88–335.**

Court of Appeals of Arizona, Division 1, Department C.

March 20, 1990.

Squire, Sanders & Dempsey by Dennis I. Wilenchik and Judith M. Prakel, Phoenix, for appellees.

Brunn W. Roysden, Jr., Phoenix, for appellants.

## OPINION

GERBER, Judge.

This appeal arises from an action based upon a loan contract between appellants Harold and Barbara Smith (Smiths) and appellee Justice Mortgage Co., Inc. (Justice Mortgage). Appellee Wells Fargo Credit Corporation (Wells Fargo) became a party to the contract as assignee of Justice Mortgage.

FACTS

In April 1985 the Smiths approached Justice Mortgage for a mortgage loan. Through a contractual arrangement with Justice Mortgage, Wells Fargo processed and approved the loan. Justice Mortgage and the Smiths formally entered into a loan agreement on June 13, 1985 which provided that the Smiths would borrow $54,000 at 13.35% interest and repay that sum over 15 years. The contract stated that the monthly payments were to be $347.85, exactly half the amount necessary to fully repay the loan agreement. This figure is at the heart of this litigation.

Justice Mortgage assigned the loan in writing to Wells Fargo. The error in the repayment amount was later realized and Wells Fargo attempted to have the Smiths execute an amended agreement. When they refused, Wells Fargo brought suit for a declaratory judgment to establish that the Smiths correctly owed $695.70 a month under the mortgage loan contract. Wells Fargo also sought to have the contract reformed to show this amount. The Smiths denied Wells Fargo's contentions, counterclaimed and brought Justice Mortgage into the suit. The Smiths alleged fraudulent misrepresentation and negli-

gence on the part of both Wells Fargo and Justice Mortgage and statutory violations by both companies. In particular, the Smiths contended that Justice Mortgage violated A.R.S. §§ 6–901 and 907 and that both entities violated the federal Truth in Lending Act (TILA), 15 U.S.C. §§ 1639, and 1640, Ch. 41 (1982). The Smiths sought fees based on the contract from both Justice Mortgage and Wells Fargo and also sought indemnification from Justice Mortgage.

In the trial court, Wells Fargo moved for summary judgment contending there was no issue of material fact because the Smiths either knew or easily could discover the correct monthly payment amount from documents given them. The Smiths countered the motion with affidavits asserting that the amount of monthly payments was the critical consideration in obtaining the loan, that the amount disclosed in the loan agreement was consistent with the amount discussed in the April 1985 meeting, and that they would not have taken out the loan had they known the rate of repayment would be twice as great as listed on the loan agreement.

On February 11, 1988, the trial court granted Wells Fargo's motion for summary judgment. It also reformed the promissory note to reflect $695.70 as the correct monthly amount owed. The trial court then dismissed all the Smiths' counterclaims. The court also ordered the Smiths to pay attorney's fees incurred by Wells Fargo and Justice Mortgage and also imposed attorney's fees upon the Smiths' law firm.

The Smiths and their attorneys appealed these judgments on April 20, 1988. Prior to appeal, however, the Smiths notified Wells Fargo and Justice Mortgage that they were rescinding the loan agreement pursuant to 15 U.S.C. § 1635 (1982). Wells Fargo then filed a supplemental complaint with the trial court on March 31, 1988. On April 29, 1988, the Smiths removed the case to the U.S. District Court for the State of Arizona.

On removal, the federal district court summarily held that the Smiths had a right under 15 U.S.C. § 1635(a) to rescind the agreement. *Smith v. Wells Fargo Credit Corp.*, 713 F.Supp. 354 (D.Ariz.1989). The district court declined to determine whether the Smiths were bound to pay damages and attorney's fees. 713 F.Supp. at 359.

Though rescission of the mortgage loan agreement arguably makes the reformation issue moot, we must review the underlying summary judgment in order to review collateral elements of the judgment not mooted by the rescission.

## SUMMARY JUDGMENT

■ The trial court granted reformation of the mortgage loan through summary judgment entered in favor of Wells Fargo. Wells Fargo and Justice Mortgage produced affidavits from employees describing the loan processing procedure and argued that an error had been made and that the Smiths had been told the correct amount of the loan. The Smiths countered with affidavits stating that they believed in good faith that their monthly payments would be $347.85 and that they had never been told they would owe twice that amount.

The material facts are thus controverted. Wells Fargo contends the Smiths were told the correct amount they would owe; the Smiths contend they were never told they would owe $695.70 and they never would have entered into the agreement had they known they would have owed this much.[1] Because of these disputed facts, summary judgment was improper and is hereby set aside.

We next consider other aspects of the case linked to this improper ruling.

## MOTION TO COMPEL DISCOVERY

The Smiths argue on appeal that the trial court erred in failing to rule on their dis-

---

1. The document from the April 1985 meeting entitled "Good Faith Estimates" does disclose a figure of "674.94 P and I" which Wells Fargo argues should have put the Smiths on notice of how much they would owe. However, under the heading "Items Payable in Connection with the Loan, Excludable from the Finance Charge," the figure of $480.00 might well have put the Smiths on notice that they would owe considerably less than Wells Fargo contends.

covery request and the subsequent motion to compel.

The Smiths originally made discovery requests in March 1987 in the form of interrogatories and production requests asking for names, documents and procedure manuals from both lenders. Wells Fargo and Justice Mortgage moved for a protective order, alleging that the requests were unduly burdensome and that they exceeded the information necessary to address the motion for summary judgment. The Smiths then filed a motion to compel.

Following numerous continuances, the motions for protective order, to compel and for summary judgment were finally heard on August 6, 1987. The hearing, however, was recessed to give the parties an opportunity to negotiate a settlement. When settlement became impossible, the hearing resumed October 30, 1987. Only the October portion of this hearing was transcribed.

While discussing the motion for summary judgment at the October hearing, counsel for the Smiths raised the issue of discovery. He complained that the Smiths could not contest all elements of the motion for summary judgment because they could not get the necessary discovery to raise a factual issue. The court responded:

> THE COURT: I will tell you right now that this motion to compel has been pending as long as the motion for summary judgment. It has been continued, I can't tell you how many times, and you all went ahead with a motion for summary judgment this morning without first arguing the motion to compel and getting it. No request for a further continuance, and I will rule on the motion for summary judgment....
>
> You had the opportunity to get those documents by expedited hearing on the motion to compel....

Rule 56(f) of the Arizona Rules of Civil Procedure provides that summary judgment may be stayed where the party opposing the motion is prevented from discovering sufficient evidence to challenge the motion:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Rule 56(f), Arizona Rules of Civil Procedure (amended 1987).

■■■ The purpose of requiring an affidavit under Rule 56(f) is to avoid addressing a motion for summary judgment until each party has had a full opportunity to ascertain the true facts. *Bobo v. John W. Lattimore, Contractor,* 12 Ariz.App. 137, 141, 468 P.2d 404, 408 (1970). Rule 56(f) requires that parties who cannot adequately respond request a continuance on the motion for summary judgment or file an affidavit giving reasons for their inability to counter the opposing evidence. Absent a motion to continue or an affidavit, a trial court does not err in proceeding to rule on a motion for summary judgment. *Phil W. Morris Co. v. Schwartz,* 138 Ariz. 90, 94, 673 P.2d 28, 32 (App.1983). Where parties have had an ample opportunity to request a continuance until discovery is completed but fail to make such a request, summary judgment will not be reversed on the grounds that it was granted prematurely. *Abernethy v. Smith,* 17 Ariz.App. 363, 498 P.2d 175 (1972).

■■■ In the present case, the Smiths' previous attorney [2] filed an affidavit with the response to the motion for protective order and motion to compel merely stating that the discovery dispute could not be resolved. The affidavit states nothing about any inability to respond to the motion for summary judgment. The response to the motion for summary judgment does complain that Wells Fargo and Justice Mortgage refused to comply with discovery requests but does not identify the discovery needed to meet that motion.

---

**2.** The Smiths were represented by different counsel on appeal.

Counsel for the Smiths did not file an affidavit in accordance with Rule 56(f) identifying the discovery needed or giving reasons why such evidence could not be presented. He did not request a ruling on the motion to compel discovery for four months prior to the hearing on the motion for summary judgment. Given this scenario, the trial court did not abuse its discretion by denying the motion to compel.

## COUNTERCLAIMS

In their amended counterclaim, the Smiths brought claims against both Wells Fargo and Justice Mortgage for fraudulent misrepresentation, negligence, violations of A.R.S. §§ 6–901 and –907, violations of TILA and for attorney's fees. The Smiths also sought indemnification from Justice Mortgage. The trial court dismissed all these claims. We review each claim *seriatim*.

In their opening brief, the Smiths state "whatever the Court decides on the original [reformation] claim will dispose of the counterclaims." It is unclear what the Smiths mean by this assertion. Wells Fargo and Justice Mortgage argue that the Smiths waived their claims for fraudulent misrepresentation and negligence on appeal. The rules of civil appellate procedure require appellate argument to contain contentions with respect to the issues presented and the reasons for these contentions, citing to authorities, statutes and the parts of the record relied upon. Rule 13(a)(6), Arizona Rules of Civil Appellate Procedure. The Smiths provide the court with no assistance in determining whether summary judgment was proper on the fraudulent misrepresentation and negligence claims. Nonetheless we will consider whether summary judgment was proper on the Smiths' claims based upon the evidence before the trial court at the time the motion was argued.

■ To make a claim for fraudulent misrepresentation, the Smiths must show (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably con-

templated; (6) the hearer's ignorance of its falsity; (7) the listener's reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury. *Echols v. Beauty Built Homes, Inc.* 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982), citing *Nielson v. Flashberg*, 101 Ariz. 335, 419 P.2d 514 (1966).

■ To establish a claim for negligence, the Smiths must show that Wells Fargo and Justice Mortgage owed a duty, that they breached this duty, and that the Smiths suffered an injury as a proximate result of the breach. *Matts v. City of Phoenix*, 137 Ariz. 116, 118, 669 P.2d 94, 96 (App.1983).

■ In their affidavits, the Smiths recount how they entered into the loan and how the monthly payment amount was a material part of their decision. Nowhere in the Smiths' affidavits or in those of Wells Fargo and Justice Mortgage do the Smiths raise a factual issue regarding whether Wells Fargo or Justice Mortgage knowingly quoted the monthly incorrect payment amount to the Smiths. Summary judgment was therefore proper on this counterclaim since it is impossible to sustain a claim for fraudulent misrepresentation without demonstrating the speaker's knowledge of the statement's falsity. The Smiths' affidavits, however, do raise material questions of fact regarding the duty owed to them by Wells Fargo and Justice Mortgage, the breach of that duty, and the injury the Smiths claim to have suffered as a result. Summary judgment, therefore, was improperly granted on the Smiths' negligence claims. We accordingly reverse the trial court's ruling on this point.

## TILA CLAIMS

The Smiths also brought claims against Wells Fargo and Justice Mortgage for violating the Truth in Lending Act, 15 U.S.C. §§ 1638 and 1640 (1982). The trial court did not give reasons for rejecting the Smiths' TILA claims. We therefore consider both defenses used by Wells Fargo and Justice Mortgage.

Section 1638(a) imposes a duty on the creditor in a consumer credit plan to reveal the following information to an obligor:

(1) The identity of the creditor required to make disclosure.

(2)(A) The "amount financed" ...

(3) The "finance charge", not itemized....

(4) The finance charge expressed as an "annual percentage rate"....

(5) The sum of the amount financed and the finance charge, which shall be termed the "total of payments".

(6) The number, amount, and due dates or period of payments scheduled to repay the total of payments.

....

15 U.S.C. § 1638(a) (1982). The extent of civil liability is governed by § 1640, which provides:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damages sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction ... except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000....

Wells Fargo and Justice Mortgage listed the amount of payments owed by the Smiths as exactly half of what, in their view, was owed. They defended against the Smiths' claims by asserting that the mistake in the loan agreement was an unintentional, bona fide error. TILA provides:

(c) A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

15 U.S.C. § 1640(c).

In Wells Fargo's and Justice Mortgage's view, the mistake arose because the wrong payment amount was disclosed. However, Wells Fargo and Justice Mortgage were not entitled to summary judgment on this issue of bona fide error because they failed at the summary judgment hearing to satisfy all elements of this defense.

■ To utilize the bona fide error defense, a creditor must establish procedures reasonably adapted to avoid errors such as the present one. *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246 (3d Cir.1980). No statutory guidelines precisely define such procedures. Generally, creditors must show procedures "designed to avoid and prevent error which might slip through procedures aimed at good faith compliance, 'a safety catch or a rechecking mechanism.'" *Gallegos v. Stokes*, 593 F.2d 372, 376 (10th Cir.1979) superseded by statute as stated in 106 B.R. 852 (E.D.Pa.1989), quoting *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 878 (7th Cir.1976) overruled on other grounds, 686 F.2d 608 (7th Cir. 1982). Business procedures that have satisfied this requirement in other circumstances include having the work of one well-trained clerk double-checked by another, *Mirabal, id.*, and proofreading the agreement, *Henning v. Daniels*, 653 F.2d 104 (4th Cir.1981). Creditors must also demonstrate that such procedures are regularly maintained to catch errors. *Mirabal, Id.* at 877.

■ Neither Wells Fargo nor Justice Mortgage presented evidence regarding any procedures designed to catch such errors. In her affidavit, Patricia Peck, the operations supervisor for Wells Fargo at the time of the Smiths' loan, described the procedure used to process the Smiths' loan.

She stated that "(b)efore the loan documents were sent to the title company for signing at the close of escrow, they were checked for accuracy by the Documentation Processing Supervisor." No details of the procedure for checking are given, nor does Wells Fargo describe the qualifications possessed by the employee. In this light, neither Wells Fargo nor Justice Mortgage presented sufficient evidence to warrant summary judgment in their favor on the bona fide error defense. Accordingly, this portion of the summary judgment is set aside.

■ Wells Fargo and Justice Mortgage, however, did present sufficient evidence to merit summary judgment on the TILA claim regarding prompt correction of the error. TILA provides a limited escape for civil liability under § 1640 for creditors who correct their errors within 60 days:

A creditor or assignee has no liability under this section or section 1607 of this title or section 1611 of this title for any failure to comply with any requirement imposed under this part or part E of this subchapter, if within sixty days after discovering an error, whether pursuant to a final written examination report or notice issued under section 1607(e)(1) of this title or through the creditor's or assignee's own procedures, and prior to the institution of an action under this section or the receipt of written notice of the error from the obligor, the creditor or assignee notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed, or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower.

§ 1640(b). Neither Wells Fargo and Justice Mortgage nor the Smiths dispute that the error was discovered and the Smiths were notified in a timely fashion. Instead, the Smiths first argue that § 1640(b) limits Wells Fargo's recovery to $347.85 and secondly, that Wells Fargo improperly notified them of the error.

The Smiths misinterpret § 1640 by insisting that § 1640(b) limits repayment to $347.85. The statute provides that if § 1640(b) applies, Wells Fargo must adjust the agreement so that the Smiths will not have to pay an amount in excess of "the charge actually disclosed" or "the dollar equivalent of the annual percentage rate actually disclosed," whichever is lower.

The Smiths argue that $347.85 is "the charge actually disclosed." An accurate reading of the statute, however, suggests otherwise. The monthly payment to which the Smiths refer is termed amount of payment by TILA. 15 U.S.C. § 1638(a)(6), (g); 12 C.F.R. § 226.18(g). Nowhere does the Act refer to the monthly payment as a "charge." Instead, the Act requires the display of three other types of charges: The itemized charges associated with the amount financed under § 1638(a)(2)(A) and 12 C.F.R. § 226.18(c); charges that a creditor may assess because of late payment under § 1638(a)(3), (4) and 12 C.F.R. 226.-18(d); and the finance charge under § 1638(a)(3), (4) and 12 C.F.R. § 226.18(d). Of these, "the charge actually disclosed" refers to the finance charge, i.e., the dollar cost for extending credit to borrowers. The purpose of the act is to assure a meaningful disclosure of credit terms so that consumers make informed choices when seeking credit. 15 U.S.C. § 1601.

In the present case, the finance charge actually disclosed is identical to the dollar equivalent of the annual percentage rate disclosed; both figures equal $74,223.74. This statute, therefore, does not bind Wells Fargo to the amount of payment of $347.85 claimed by the Smiths. We do not suggest that the amount of monthly payment is an unimportant term in a loan agreement. Rather, § 1638(a)(6) makes the amount of monthly payment a material term for loans governed by TILA. We recognize only that § 1640(b) does not require lenders to adjust downward the amount of monthly payments owed where that amount is incorrectly quoted in the loan agreement.

■ The Smiths' second argument is that Wells Fargo failed to satisfy § 1640(b) because notice was improperly given. The

Smiths argue that to notify them of the error, Wells Fargo was required to forward to them a corrected disclosure statement. The statute, however, only demands notice of the error, not a corrected disclosure statement. Wells Fargo satisfied this requirement by mailing a letter to the Smiths notifying them of the error in the amount of payments.

Wells Fargo and Justice Mortgage presented evidence at the summary judgment hearing that satisfied § 1640(b). Conversely, the Smiths failed to raise any factual or legal contention to maintain their contrary claim against Wells Fargo and Justice Mortgage. Summary judgment, therefore, was proper on the Smiths' TILA counterclaims.

SMITHS' CLAIMS UNDER A.R.S. §§ 6–901 et seq.

The Smiths also brought a claim against Justice Mortgage for violating A.R.S. §§ 6–901 *et seq.* This claim was neither argued to the trial court nor was it raised in briefs on appeal. Accordingly, the claim is deemed to be waived and we will not address it. *Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977).

ATTORNEY'S FEES

The trial court ordered the Smiths to pay the attorney's fees and expenses of Wells Fargo and Justice Mortgage pursuant to a clause in the contract. The amount of fees awarded totalled $46,650.95. The order provided that this award was to be discounted by the amount of fees that the Smiths' attorneys were also to pay for the court's finding of a Rule 11 violation. The contract provided:

ATTORNEY FEES: Borrowers agree to pay Creditor's reasonable attorney fees, court costs and other expenses if this agreement is referred for collection to an attorney who is not a salaried employee of Creditor. In addition, Borrowers agree to pay such reasonable costs and expenses as Creditor may incur in enforcing this agreement.

The Smiths originally challenged the award on the grounds that they had not acted in bad faith and that the award would create a hardship on them. The Smiths now contend that the award is excessive in light of the amount in controversy and that the trial court erred by awarding fees for in-house counsel.

The trial court's order of attorney's fees appears motivated by the contractual provision above and also by a finding that the Smiths' claim was frivolous. However, on the major issue, summary judgment was improperly granted on the issue of reformation of the loan agreement because of disputed questions of fact. The existence of this bona fide dispute is enough to void the fees assessed against the Smiths.

RULE 11 SANCTIONS

The trial court also assessed attorney's fees apparently under Rule 11 against the Smiths' attorneys totalling $17,814.50. The trial court found that "counsel should have known by the time that the second amended counterclaim and third-party complaint were filed that the claims therein as well as the defense to the main suit were 'groundless, insubstantial and unjustified.' "

The purpose of Rule 11 is to discourage wasteful, costly litigation battles by mandatory sanctions where the position of the lawyer will not support a sound basis in law or fact justifying the position asserted. *Gilbert v. Bd. of Medical Examiners,* 155 Ariz. 169, 183, 745 P.2d 617, 631 (App.1987). The trial court must make specific findings to justify its conclusion that a party's claims or defenses are frivolous. *State v. Richey,* 160 Ariz. 564, 774 P.2d 1354 (1989). Here, the trial court made no such findings. Furthermore, the existence of disputed facts at the time of the summary judgment hearing indicates a bona fide dispute that is "well-grounded." For both reasons we reverse the trial court's Rule 11 sanctions against Smiths' attorneys.

MOTION FOR ATTORNEY'S FEES UPON APPEAL

Wells Fargo and Justice Mortgage request attorney's fees against the Smiths

and Simonson and Arbetman for expenses incurred upon appeal. The Smiths also have requested attorney's fees. Since there is merit to elements of both parties' appeal, we decline to award fees at all. Because of the reversals mentioned above, this matter is remanded to the trial court for further proceedings consistent with this opinion and with the federal litigation.

FIDEL, P.J., and EUBANK, J., concur.