Brendan S. LUNDY, et al., Plaintiffs,

v.

AIRTOUCH COMMUNICATIONS, INC., d/b/a Airtouch Paging, a Delaware Corporation, et al., Defendants.

No. CIV 98–2007–PHX–ROS.

United States District Court, D. Arizona.

April 29, 1999.

Garry N. Keister, Golston Keister & Steen PLC, Tempe, AZ, for Brendan S. Lundy, Rosamund Lundy, plaintiffs.

James Thomas Tucker, Bryan Cave LLP, Joseph T. Clees, James Thomas Tucker, Bryan Cave LLP, Phoenix, AZ, for Airtouch Paging Inc, Airtouch Communications, Inc., Black Corporations, I–X, White Partnerships, I–X, John/Jane Does, I–X, Airtouch Communications, Inc., defendants.

## ORDER

SILVER, District Judge.

On October 6, 1998, Plaintiff[1] filed an action in Maricopa County Superior Court alleging that AirTouch Paging[2] ("AirTouch") discharged him in retaliation for reporting the alleged wrongful conduct of another employee. Plaintiff also alleges that Defendant instructed its employees not to provide prospective future employers a positive recommendation of Plaintiff, thereby intentionally and unjustifiably interfering with Plaintiff's valid business expectancy with those prospective future employers. Defendant filed a Notice of Removal in this court on November 6, 1998 and filed the pending Motion for Summary Judgment in lieu of an Answer on November 11, 1998. This Court has jurisdiction on the basis of diversity.

---

1. Although the action was filed by both Brendan S. Lundy and his wife, Rosamund Lundy, this Order refers to Mr. Lundy as "Plaintiff" for ease of reference.

2. By Amended Complaint dated November 23, 1998, Plaintiff changed this Defendant to AirTouch Communications, Inc. d/b/a Air-

Touch Paging. The Court refers to both companies interchangeably as "Defendant" or "AirTouch." Moreover, the Court will refer only to one Defendant because the remaining Defendants are John Doe defendants who have never been served.

## LEGAL STANDARD

A motion for summary judgment may be granted if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court views the evidence in the light most favorable to the nonmoving party and draws any reasonable inferences in the nonmoving party's favor. *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

## DISCUSSION

Each party claims that the other engaged in wrongful conduct. Plaintiff claims he was terminated in retaliation for reporting to Dennis Anderson, Defendant AirTouch's Vice President for Human Resources, that accounting manager Tanya Hall had breached her fiduciary duty to AirTouch and engaged in other wrongful conduct in violation of Arizona statutes. (Amended Compl. ¶ 34.) Defendant alleges that it allowed Plaintiff to resign upon discovering that Plaintiff had misused company funds by authorizing a company check for $4,993.00 to pay charges on Ms. Hall's credit card, charges unrelated to business. (Anderson Aff. at ¶¶ 25–27.) Defendant further alleges that it discovered the alleged misuse of company funds while investigating Ms. Hall's claim that Plaintiff was retaliating against her for declining "his attempts to engage in a romantic relationship with her." (Anderson Aff. at ¶¶ 3–4.)

## I. Validity of Release

Although it is helpful to understand these mutual allegations as background, Defendant requests summary judgment on a much more narrow basis—Defendant argues that Plaintiff's claims are barred by the release he signed upon resigning from AirTouch. Plaintiff responds that the release is void for any one of three reasons: Plaintiff signed the release under duress, Defendant obtained the release by making a fraudulent misrepresentation, or the release is void on public policy grounds.

### A. Duress

■ As stated above, Plaintiff claims that he signed the release under duress. Although Plaintiff cites a federal court decision setting forth federal common law rules of duress, Arizona state law applies to this diversity action. The Arizona Supreme Court had adopted the definition of duress set forth in the *Restatement of Contracts* § 429:

(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or

(b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement....

[cmt. a] The test of what act or threat constitutes duress is determined by considering whether the threat placed the party entering into the transaction in such fear as to preclude the exercise by him of free will and judgment.

*In re Estate of Cohen*, 105 Ariz. 337, 464 P.2d 620, 624 (1970) (quoting *Dunbar v. Dunbar*, 102 Ariz. 352, 429 P.2d 949, 952 (1967) (quoting *Restatement of Contracts* § 429 and cmt. a)).

Applying these legal standards to the relevant facts viewed in the light most favorable to Plaintiff, the nonmoving party, the Court concludes that Plaintiff did not sign the release under duress. In support

of their argument that Plaintiff made a voluntary choice, exercising his free will, Defendant emphasizes Plaintiff's sophistication as a business person. *See Hisel v. Upchurch,* 797 F.Supp. 1509, 1525 (D.Ariz. 1992). The *Hisel* decision relies upon the federal common law of duress, but the list of factors set forth to determine whether a decision is voluntary can be utilized in applying the Arizona common·law standard.

Plaintiff's resume, the accuracy of which Plaintiff does not dispute, *see* PSOF ¶ 4, indicates that Plaintiff has held a number of increasingly complex business management positions since obtaining an M.B.A. in International Marketing from Seattle Pacific University in 1987. In 1988, he was promoted to the position of Consumer Products Group Marketing Manager for Bristol–Myers Squibb Corporation, a job that entailed developing the marketing plans for an entire group of brand-name consumer products. In 1990, he co-founded and managed a company in England that distributed new and licensed brands of sports apparel and several other products throughout Western Europe. Beginning in 1993, Plaintiff spent two years as General Manager and Chief Operating Officer of a division of a publishing company, working with a staff of seventy-five employees in a variety of departments, including marketing, sales, finance, human resources, information systems, purchasing, production, and distribution. (Lundy Resume, Exh. D to DSOF.)

In 1996, Plaintiff began working for Air-Touch, where he was promoted to the position of Phoenix District General Manager in less than one and one-half years due to his outstanding performance. (Lund Aff. ¶ 2.) In this position, Plaintiff was responsible for the operations of the Phoenix District, including marketing, budgeting, operations, supervision of employees, and sales. (Amended Compl. ¶ 8.) The breadth and depth of Plaintiff's experience in the business sector belies the notion that his free will was overcome in the circumstances discussed in greater detail below.

In addition to his background, it is clear from the record that Defendant provided Plaintiff several days of notice that his job was in serious jeopardy, prior to giving him the choice between resignation and termination. On August 7, 1998, four days before the August 11, 1998 meeting at which Plaintiff signed the release, Human Resources Vice–President Dennis Anderson and Vice President and Regional Manager Edward Gurry, Plaintiff's immediate supervisor, met with Plaintiff for approximately six and one-half hours, including a lunch period that the three men shared. (Lundy Aff. at ¶¶ 27, 30.) At this meeting, the two Vice Presidents informed Plaintiff that Hall had complained to Air-Touch personnel of sexual harassment by Plaintiff. (*Id.* at ¶ 30.) Anderson and Gurry stressed that the accusations were serious and that "it did not look good for [Plaintiff]." (*Id.*)

The two Vice Presidents proceeded to show Plaintiff a copy of Hall's signed statement and discussed with Plaintiff the accusations Hall had made. (*Id.*; Pl.'s Controverting Statement of Facts ("PSOF") ¶ 17.) Plaintiff denied all of Hall's accusations, including the accusation that Plaintiff had forced her to spend the night with him at a hotel while the two of them were on a trip to Santa Monica, California. (Lundy Aff. ¶ 30.) Plaintiff gave the two Vice Presidents permission to obtain information about the trip from both a travel agency and the hotel. (*Id.* at ¶ 31.)

Anderson and Gurry also questioned Plaintiff about a $4,993 expense check Plaintiff had authorized for payment of charges on Hall's credit card. (*Id.* at ¶ 33; PSOF ¶ 23.) Plaintiff told the two Vice Presidents that he had signed the check at Hall's request for payment of an advance on a company outing, a boat cruise on Lake Pleasant. Plaintiff added that he had reviewed a purchase order containing Hall's representations about the use of the funds, and that the purchase order would

confirm what he had told them. (Lundy Aff. ¶ 34; PSOF ¶ 25.) Anderson and Gurry asked Plaintiff's administrative assistant to find the purchase order but she was unable to do so. (Lundy Aff. ¶ 35; PSOF ¶ 26.) At the conclusion of the meeting, Gurry told Plaintiff that he would return the following week. (Lundy Aff. ¶ 39.) The serious allegations raised at this meeting were sufficient to put Plaintiff on notice that his position was in jeopardy and that he should begin considering his alternatives.

Even absent this preliminary notice, nothing Anderson or Gurry did during the meeting on April 11 constituted either an act or a threat sufficient to put Plaintiff under duress. *See In re Estate of Cohen,* 464 P.2d at 624. Once again viewing the evidence in the light most favorable to Plaintiff, the non-moving party, Anderson and Gurry were waiting for Plaintiff in the Phoenix office when the latter returned on August 11, 1999, from a business trip to Seattle. (Lundy Aff. ¶ 40, PSOF ¶ 43.) The two Vice Presidents informed Plaintiff that he was being terminated effective immediately for misusing AirTouch's fund by authorizing an improper payment of $4,993 to Hall's credit card company. (Lundy Aff. ¶ 41, PSOF ¶ 44.) Plaintiff once again claimed that the check was for an employee dinner cruise. (Lundy Aff. ¶ 41, PSOF ¶ 44.)

At this point, either Gurry or Anderson proceeded to explain to Plaintiff that, instead of being terminated for misconduct and losing the ability to exercise his vested stock options as a result, Plaintiff could submit his resignation from AirTouch and exercise the stock options in return for releasing any claims he might have against AirTouch. (Lundy Aff. ¶ 42, PSOF ¶ 46.) Gurry and Anderson gave Plaintiff until 5:00 that afternoon, a period of less than three and one-half hours, to make a decision. (Lundy Aff. ¶ 42, PSOF ¶ 52.) The two Vice Presidents did not suggest that Plaintiff seek legal advice and he did not do so. (Lundy Aff. ¶ 42, PSOF ¶ 52.)

After this conversation, Gurry and Anderson left Plaintiff's office, giving him time to make phone calls. (Lundy Aff. ¶ 43.) Plaintiff took this opportunity to call his father and several colleagues in the company. (*Id.*) Upon remembering that he had additional stock options vesting on August 15, 1998, Plaintiff spoke with Anderson and Gurry again, asking whether the resignation could be made effective on this latter date. (*Id.* at ¶ 44.) The Vice Presidents responded that Plaintiff had no options vesting on August 15 and thus no reason to delay the effective resignation date. (*Id.*)

Before the afternoon drew to a close, Plaintiff signed the release. He told Anderson and Gurry that he had not done anything improper but that he "did not see any choice but to sign the Release Agreement because of [his] financial conditions and [his] responsibility to [his] family." (*Id.* at ¶ 46..) Subsequently, Plaintiff accepted a check for $2,000 gross in consideration for signing the release. (*Id.* at ¶ 46, PSOF ¶ 66.) He also exercised the stock options that had vested by August 11, worth $270,000 gross. (Lundy Aff. ¶ 49, PSOF ¶ 67.)

These circumstances, set forth in the light most favorable to Plaintiff, are insufficient to support a finding of duress because Defendant's agent's acts did not put Plaintiff "in such fear as to preclude the exercise by him of free will and judgment." *In re Estate of Cohen,* 464 P.2d at 624 (internal quotations omitted.) Plaintiff faced a difficult economic choice. He could retain the right to exercise his stock options immediately in return for losing the possibility of maintaining a legal action against AirTouch and potentially obtaining a large damages award if successful. Instead, he could retain the right to maintain a legal action, and with it the potential of a large damages award, in return for being terminated and losing the right to exercise his stock options unless and until his name was cleared. However, the fact that Plaintiff's choice involved significant economic

considerations does not support a conclusion that Plaintiff acted under duress. *See Republic Nat'l Life Ins. Co. v. Rudine*, 137 Ariz. 62, 668 P.2d 905, 909 (Ct.App.), *rev. denied* (Ariz.1983).

Plaintiff also faced the difficult personal choice of resigning and thereby avoiding a termination for misconduct, or being terminated for misconduct without losing the right to pursue legal action that may have cleared his name. However, the fact that the choices were difficult does not support the conclusion that Defendant's agents' conduct placed Plaintiff in such fear that he had no choice but to make the decision he did. *In re Estate of Cohen*, 464 P.2d at 624. The choice of resigning or being fired, while unpleasant, does not alone constitute duress. *See Constant v. Continental Tel. Co. of Illinois*, 745 F.Supp. 1374, 1384 (C.D.Ill.1990); *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 614 N.E.2d 765, 768 (1992).

Plaintiff faced a situation dramatically different from that faced by a police officer who signed a document granting immunity from suit to a man holding both his own children and the police officer hostage at gunpoint. *State of Arizona v. Sands*, 145 Ariz. 269, 700 P.2d 1369, 1374 (Ct.App.), *rev. denied*, (Ariz.1985). While the latter situation is sufficiently fear-inducing to support the conclusion that the document was signed under duress, the circumstances underlying the instant action are not.

**B. Fraudulent Misrepresentation**

■ As stated above, Plaintiffs argue in the alternative that the release is void because it resulted from Defendant's fraudulent misrepresentation. This argument is based on the following allegations. While he was considering his options after the initial meeting with Anderson and Gurry on August 11, Plaintiff asked the two Vice Presidents if his resignation could be made effective August 15, 1998 because he had additional stock options vesting on that date. (Lundy Aff. ¶ 43–44.) However, Anderson and Gurry informed Plaintiff that he did not have options vesting on August 15 and thus there was no reason to delay the effective date of the resignation. (*Id.* ¶ 44.) In his Response, Plaintiff states that: "Because of Anderson's and Gurry's representation, [Plaintiff] Lundy decided not to insist on an extension of the termination date and proceeded to sign the Release." [3] However, by letter dated September 14, 1998, Anderson confirmed information that he apparently had provided to Plaintiff on voice mail earlier—as of the date of the resignation, August 11, Plaintiff did have additional stock options due to vest on August 15.[4] (Lundy Aff. ¶ 48 and attached Sept. 14 Letter from Anderson.)

Plaintiff does not set forth the Arizona law governing recission of contracts on the ground of fraudulent misrepresentation; rather, he relies upon the *Restatement (Second) of Contracts* ("*Restatement*"), section 162, which provides:

> (1) a misrepresentation is fraudulent if ... the maker
>
> (a) knows or believes that the assertion is not in accord with the facts, or
>
> (b) does not have the confidence that he states or implies in the truth of the assertion, or

3. The paragraph of his affidavit that Plaintiff cites in support of this statement, paragraph 45, contains no reference to a decision to forego an extended termination date. Rather, it states: "I told Anderson and Gurry that I did not do anything improper but that I did not see any choice but to sign the Release Agreement because of my financial conditions and my responsibility to my family." However, Plaintiff also verified the statements of fact in his Response under penalty of perjury. The Court will consider the statement as one falling within the scope of this verification.

4. Anderson asked Plaintiff to sign a second release in return for AirTouch accepting a revised resignation date and allowing Plaintiff to exercise the additional options, but Plaintiff refused to sign the second release. (Lundy Aff. ¶ 48 and attached Sept. 14 Letter from Anderson.)

(c) knows that he does not have the basis that he states or implies for the assertion.

The alternative requirements set forth in subsections a and b of § 162 for proving that a misrepresentation is fraudulent are analogous to those set forth in Arizona court decisions. In decisions addressing actions for contract recission on the ground of misrepresentation, the Arizona courts explain that the elements of the misrepresentation claim vary depending upon whether the misrepresentation is alleged to be innocent or fraudulent. *See Lehnhardt v. City of Phoenix,* 105 Ariz. 142, 460 P.2d 637, 639 (1969); *Berry v. Robotka,* 9 Ariz.App. 461, 453 P.2d 972, 978 (1969). If a party requests recission on the ground of innocent, as opposed to fraudulent, misrepresentation, the recission claim does not require proof of each of the nine elements of actionable fraud. *See Lehnhardt,* 460 P.2d at 639; *Berry,* 453 P.2d at 978. In the context of innocent misrepresentation, the irrelevant element of the nine appears to be: "the speaker's knowledge of [the] falsity [of the representation] or ignorance of its truth." *Wells Fargo Credit Corp. v. Smith,* 166 Ariz. 489, 803 P.2d 900, 905 (Ct.App.1990). However, if the party seeking recission asserts only fraudulent misrepresentation, as does Plaintiff here, then proof of all nine of the elements of actionable fraud appears to be required, including the element pertaining to the speaker's knowledge. *See Lehnhardt,* 460 P.2d at 639; *Berry,* 453 P.2d at 978.

The first alternative requirement set forth in the *Restatement,* § 162(a) for proving that a statement is fraudulent, proof that the maker "knows or believes that the assertion is not in accord with the facts," is analogous to the first alternative requirement set forth in Arizona law, proof of "the speaker's knowledge of [the] falsity [of the representation]." *Wells Fargo Credit Corp.,* 803 P.2d at 905. The second alternative requirement set forth in the *Restatement,* § 162(b), is explained further in comment b:

> [T]he second requirement ... is met if the maker, lacking confidence in the truth of his assertion that he states or implies, nevertheless chooses to make it as one of his own knowledge rather than one merely of his opinion. This is so when he is conscious that he has only a belief in its truth and recognizes that there is some chance that it may not be true.

This requirement is analogous to the second alternative requirement set forth in Arizona law, proof of "the speaker's ... ignorance of [the] truth [of the representation]." *Wells Fargo Credit Corp.,* 803 P.2d at 905. There being no dispute that the party seeking to rescind the contract must prove the maker's knowledge of the representation's falsity or ignorance of whether the representation is true, the Court will proceed to determine whether Plaintiff has established the existence of a genuine issue of material fact with respect to this element.

 In his Response, Plaintiff attempts to establish a genuine issue of material fact with respect to the element of knowledge by pointing out that Anderson and Gurry are "high level management personnel of AirTouch," occupying, respectively, the positions of Vice President of Human Resources, and Vice President and Regional Manager. Plaintiff adds: "Clearly, either one or both of them should have or could have verified the information, even if they honestly believed that Lundy was incorrect." (Pl's. Response at 5.) However, the issue is not whether Anderson or Gurry could have verified whether Plaintiff had additional options vesting on August 15, but whether Anderson or Gurry either knew that Plaintiff had options vesting on August 15 or were ignorant about the matter when Anderson stated that Plaintiff did not have additional options vesting until November or December. *Wells Fargo Credit Corp.,* 803 P.2d at 905. The undisputed evidence of record indicates that

Anderson had verified the information he provided to Plaintiff earlier the same day. Specifically, Anderson avers "that [he] had checked with the Executive Compensation Department that morning and they had assured [him that Plaintiff] did not have any more options vesting until November or December." (Anderson Aff. at ¶ 47; Gurry Aff. at ¶ 51.) Plaintiff does not offer contrary evidence.

Plaintiff has not established a genuine issue of material fact regarding the knowledge element of a claim for recission on grounds of fraudulent misrepresentation. Thus, Defendant is entitled to summary judgment on this issue.

In its Reply, Defendant makes several additional arguments regarding Plaintiff's request to void the release on grounds of fraudulent misrepresentation. As Defendants point out, Plaintiff averred that he "remembered that there was a stock option that was due on August 15, 1998." (Lundy Aff. ¶ 43.) Defendants argue that this averment refutes the contention that Plaintiff relied upon a contrary statement by Anderson and Gurry in deciding to exercise the release. Defendant's argument fails. Plaintiff's initial remembrance does not preclude his subsequent reliance on the information provided by Vice President Anderson given the latter's position and access to the relevant information. Plaintiff's reliance is even more justified because Anderson stated that he had just confirmed the information with the Executive Compensation Department that morning.

Next, Defendants argue that statements about the date that Plaintiff's stock options would vest were statements about future events and thus they could not constitute fraudulent misrepresentation. To constitute actionable fraud, a representation must relate to a past or an existing fact. *Staheli v. Kauffman*, 122 Ariz. 380, 595 P.2d 172, 175 (1979). As Defendants state, the representation "cannot be predicated on unfulfilled promises, expressions of intention or statements concerning future events unless such were made with the present intention not to perform." *Id.* at 176. This rule exists because "a promise to perform in the future is not a representation which can be shown to be true or false at the time it was made, and therefore, a person has no right to rely, in a legal sense, on a representation of a fact not in existence." *Id.* (internal quotation omitted). However, even if the date on which a stock option will vest is in the future, the vesting date is an existing fact and a statement about the vesting date can be proven true or false when made. The vesting date is not a promise or expression of intention and thus Defendant's argument that the statement cannot constitute a fraudulent misrepresentation likewise fails.

Defendants also point to Plaintiff's assertion that, "[o]n August 11, 1998, Anderson and Gurry told [him] that he was terminated as of that date, no matter if he executed the Release Agreement or not." (Pl.'s Response at 4.) Defendants argue that, by making this assertion, Plaintiff has conceded that AirTouch was unwilling to negotiate an extension of Plaintiff's employment term. The Court does not interpret Plaintiff's assertion as a concession that AirTouch would not consider negotiating a four-day time extension. In the affidavits on which Plaintiff relies to make the aforementioned assertion, Plaintiff sets forth information about the potential termination in order to explain the choices offered him—termination, or resignation with a release. Plaintiff has not conceded that AirTouch was unwilling to negotiate a four-day extension of the effective termination date.

Next, Defendant sets forth a case in which an Arizona appellate court rejected a fraudulent inducement claim on the ground that the plaintiff had no right to rely on representations contrary to the clear language of the release. *See Jones v. Chiado Corp.*, 137 Ariz. 298, 670 P.2d 403, 405 (Ct.App.1983). Defendant argues that, in the instant action, the release agree-

ment expressly provides that AirTouch made no representations other than those set forth in the release. Defendant's argument fails because Defendant also relies on representations other than those in the release, particularly the representation that Plaintiff could exercise already-vested stock options if he resigned rather than being terminated for cause. Moreover, the continued validity of *Jones* has been expressly called into question by a subsequent decision of the Arizona Court of Appeals. *Lubin v. Johnson,* 169 Ariz. 464, 820 P.2d 328, 328–29 (Ct.App.1991).

Finally, Defendant argues that, even if fraudulent misrepresentation is proven, the release would remain enforceable because Plaintiff has retained the consideration Defendant paid pursuant to the terms of the release, Generally a party seeking to rescind a contract must either restore or offer to restore to the other party whatever he or she received pursuant to the contract. *Jennings v. Lee,* 105 Ariz. 167, 461 P.2d 161, 165 (1969). However, the offer to restore need not precede a suit seeking recission. *Id.* In the instant action, Plaintiff's Complaint does not contain a request to rescind the release; however, he cannot maintain his action for retaliation unless the release is rescinded. Were the action to proceed, the Court would grant Plaintiff leave to file an Amended Complaint requesting recission of the release on the grounds of fraudulent misrepresentation and adding an offer to restore that which he received under the release. *See id.* (offer to restore contained in Complaint is sufficient). However, there being no genuine issue of material fact regarding fraudulent misrepresentation, leave to amend would be futile.

## C. Public Policy

■ Plaintiff argues that the release is void as contrary to public policy because it interferes with the important public interest in proscribing retaliatory discharge of an employee for reporting conduct of another employee that violates state law.

Plaintiff is incorrect because Arizona public policy favors settlement of legal controversies in general. *See Hartford Accident & Indem. Co. v. Aetna Cas. & Sur. Co.,* 164 Ariz. 286, 792 P.2d 749, 753 (1990) (internal quotation omitted); *United Bank of Arizona v. Sun Valley Door & Supply, Inc.,* 149 Ariz. 64, 716 P.2d 433, 436 (Ct. App.1986). Public policy favoring settlement applies to an employee's claims of wrongful discharge. *See Stroman v. West Coast Grocery Co.,* 884 F.2d 458, 460–61 (9th Cir.1989) (internal quotation omitted), *cert. denied,* 498 U.S. 854, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990). Although the Ninth Circuit in *Stroman* was discussing settlement of Title VII discrimination claims, the public policy in favor of settlement applies equally to claims of retaliatory discharge in violation of Arizona law.

## D. Claim of Interference with Business Expectancy

■ Finally, Plaintiff argues that, even if the release is valid, it does not apply to Plaintiff's claim that AirTouch wrongfully prevented its employees from providing letters of recommendation to Plaintiff. The release applies to "all rights, claims and actions which [Plaintiff] has or may in the future have arising out of, relating to, or in connection with [Plaintiff's] employment with [Defendant] and the termination thereof." Plaintiff argues that the claim of interference did not arise out of his employment with AirTouch; rather, he argues, it arose out of actions occurring after his resignation. Plaintiff's argument fails. Plaintiff's claim of interference with business expectancy either "relat[es] to" or is "in connection with" Plaintiff's employment with Defendant because Plaintiff was seeking letters of recommendation from employees of Defendant, individuals who are in a position to make observations about Plaintiff's employment with Defendant. Moreover, Plaintiff was asking for such letters despite the fact that he resigned in lieu of termination for misconduct. The request for letters of recommendation is

integrally tied to Plaintiff's employment with AirTouch and thus the interference with business expectancy claim likewise is related thereto.

## II. Motions to Strike

Defendant has filed both a Motion to Strike Plaintiff's Verified Complaint and a Motion to Strike Plaintiff's Verified Pleadings, including Plaintiff's Response to Defendant's Motion for Summary Judgment, the accompanying Controverting Statement of Facts, and Affidavit. Plaintiff filed an Amended Complaint after Defendant filed the Motion to Strike the original Complaint, however, Defendants state in their Motion to Strike Verified Pleadings that the arguments apply equally to the Amended Complaint. Accordingly, the Court will consider both Motions.

Defendant argues that Plaintiff cannot offer as evidence (1) the statements he makes based on information and belief, (2) his statements that the portions of Defendants' Statement of Fact that he cannot recollect are "denied," and (3) the statements that are legal conclusions. The Court agrees. While Plaintiff's verified pleadings may be treated as opposing affidavits for the purpose of evaluating Defendant's Motion for Summary Judgment, they are subject to the same limitations applicable to affidavits: they may be considered only to the extent that they are "based on personal knowledge" and "set forth specific facts admissible in evidence." *Schroeder v. McDonald,* 55 F.3d 454, 460 (9th Cir.1995) (citing Fed.R.Civ.P. 56(e)).

The Court finds it unnecessary to analyze each verified pleading paragraph by paragraph to determine which portions to strike, particularly because a great deal of information in the verified pleadings is irrelevant to the validity of the release, the issue before the court in Defendant's Motion for Summary Judgment. The Court is particularly reluctant to strike portions of the verified Amended Complaint because complaints may contain information not allowed in affidavits at summary judg-ment, such as facts alleged "on information and belief." Instead of striking specific portions, the Court has considered the Verified Pleadings only to the extent that they contain information satisfying the requirements of personal knowledge and admissible evidence. The Motions to Strike will be denied.

## III. Motion for Summary Disposition of Motion to Strike Complaint

The Court has a stamped copy of Defendant's Motion for Summary Disposition filed December 28, 1998. The original was never docketed, but Plaintiff's Response indicates that he received a copy as well. The Court will order the clerk's office to docket the stamped copy, and deny the Motion as moot.

Accordingly,

**IT IS ORDERED** granting Defendant's Motion for Summary Judgment. (Dkt.# 2).

**IT IS FURTHER ORDERED** denying Defendant's Motions to Strike. (Dkt. 4, 10).

**IT IS FURTHER ORDERED** that the clerk's office docket the copy of Defendant AirTouch's Motion for Summary Disposition of Its Motion to Strike the Verified Complaint, stamped December 28, 1998, and deny the Motion as moot.

**IT IS FURTHER ORDERED** vacating the hearing set for Friday, April 23, 1999.