**MERITAGE HOMES CORPORATION,**
et al., Plaintiffs,

v.

**Ricky Lee HANCOCK,**
et al., Defendants.

**And Related Counterclaims.**

No. CV04–0384–PHX–ROS.

United States District Court,
D. Arizona.

July 3, 2007.

Dan W. Goldfine, Jason Scott Vanacour, Richard Gray Erickson, Adam Elliott Lang, Cory L Braddock, Snell & Wilmer, Joel Grant Woods, Law Offices of Grant Woods, Phoenix, AZ, for Plaintiffs.

Ivan Kurian Mathew, Mathew & Mathew PC, Robert Marrs Frisbee, Frisbee & Bostock PLC, Phoenix, AZ, for Defendants.

Ivan Kurian Mathew, Mathew & Mathew PC, Robert Marrs Frisbee, Frisbee & Bostock PLC, Mark I Harrison, Osborn Maledon PA, Phoenix, AZ, David Albrecht Fitzgerald, John R. Tellier, Titus Brueckner & Berry PC, Scottsdale, AZ, for Counterclaims.

## ORDER

ROSLYN O. SILVER, District Judge.

The following Order resolves numerous pending motions and sets deadlines for the completion of this case.

## I. Factual Background

While the parties disagree regarding the impact of certain events, there is little dispute about the sequence of events that led to this lawsuit. Meritage designs and builds homes in Arizona, Texas, Nevada, and California. Greg and Rick Hancock are homebuilders in Arizona and were the owners of several Arizona-based businesses. In 2001, Meritage and the Hancocks entered into a number of agreements. These agreements transferred "the physical assets of the Hancock businesses to Meritage, allow[ed] Meritage to use the Hancock trademark exclusively, and [gave] the Defendants Greg and Rick Hancock economic incentives to remain part of the management of the Hancock businesses that they had sold." (Doc. 133 p. 2–3) The agreements included: 1) a Master Transaction Agreement; 2) a license agreement to allow Meritage use of the names "Hancock Communities" and "Hancock Homes"; and 3) employment agreements for Greg and Rick Hancock.

### A. Master Transaction Agreement

The Master Transaction Agreement provided the basic terms for the purchase of the Hancock businesses. In that agreement, Meritage agreed to pay approximately $88 million for the Hancock businesses' assets. The agreement also provided that Meritage would pay Greg Hancock a series of earn-out payments.

The amount of the earn-out payments would be determined according to a formula set forth in the agreement. The agreement also contained a very broad arbitration clause:

> Any ... dispute, controversy or claim whether contractual or non-contractual, between [the parties] arising directly or indirectly out of or connected with this Agreement, relating to the breach or alleged breach of any representation, warranty, agreement, or covenant under this Agreement or otherwise relatin to this Agreement, unless mutually settled by [the parties], shall be resolved in accordance with the Dispute Resolution Procedures attached....

The Dispute Resolution Procedures stated that in the event a disagreement arose, the parties were to attempt to negotiate. If negotiation did not lead to a resolution, the parties were to engage in mediation. And if mediation failed, the parties were to submit to arbitration. (Doc. 103 Ex. I)

### B. License Agreement

The license agreement was entered into by Gregory S. Hancock, HC Builders, Inc., and Hancock Communities, L.L.C. (collectively the *Licensor*) and Hancock–MTH Builders, Inc. and Hancock–MTH Communities, Inc. (collectively the Licensee). According to the agreement, the Licensor granted a license to the Licensee for the use of the registered trademarks "Hancock Homes" and "Hancock Communities." The agreement granted the Licensee "a personal, exclusive, nontransferable, nonassignable license to use the Licensed Marks during the term of th[e] Agreement." The Licensor retained the right "to immediately terminate th[e] Agreement without prior notice if Licensee, its employees or agents shall breach any provision of this Agreement or the Master Transaction Agreement."

### C. Employment Agreements

Both Greg and Rick Hancock signed employment agreements with Meritage that included non-compete clauses. Greg Hancock agreed that for a period of five years, he would not "directly or indirectly ... engage in any homebuilding business within 100 miles of any [Meritage] project," nor would he "recruit, hire or discuss employment with any person who is, or within the six month period preceding the date of such activity was, an employee of [Meritage]" nor "solicit any customer or supplier of [Meritage] for a Competing Business or otherwise attempt to induce any such customer or supplier to discontinue its relationship with [Meritage]." Greg Hancock also agreed that for a period of three years he would not "engage in any home sales, land banking, or land development businesses within 100 miles of any [Meritage] project."

Rick Hancock's employment agreement contained a thirty-six month non-compete clause. For that time period, Rick Hancock was precluded from engaging in business "with, or in connection with, two or more of the former officers of the Hancock businesses." Also, Rick Hancock agreed to keep confidential "all of Hancock businesses' and Meritage's proprietary information."

Starting in 2001, Meritage believes Greg Hancock was involved in a number of land development projects. These projects are alleged to have been in violation of Greg Hancock's employment agreement with Meritage. On March 3, 2003, Greg Hancock resigned from Meritage. Meritage fired Rick Hancock in December 2003. In January 2004, Rick Hancock advised Meritage that he planned to develop a home building business using the name "Hancock." On February 13, 2004, counsel for Greg Hancock wrote to Meritage stating that Greg Hancock was terminating the

license agreement based on Meritage's "repeated breaches of the Master Transaction Agreement." Specifically, Greg Hancock believed Meritage had failed to pay an earn-out payment he was due. Meritage's counsel rejected the attempt at termination and threatened to sue the Hancocks.

## II. Procedural History

On February 24, 2004, Meritage filed its complaint. The complaint contained twelve causes of action: federal unfair competition, common law unfair competition and trademark infringement, breach of fiduciary duty, misappropriation of trade secrets, intentional interference with prospective contractual advantage, unjust enrichment, conversion, breach of contract, breach of implied covenant of good faith, and intentional interference with the license agreements.

The first cause of action was more specifically "unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)." (Doc. 1) According to the complaint, Defendants Greg and Rick Hancock engaged in actions that were "likely to cause confusion or mistake or to deceive customers as to affiliation, connection, or association between Defendants' mark and Meritage's Hancock trademarks." (Doc. 1 p. 9) Also, Meritage alleged Defendants "engaged in the misleading representation of facts to intentionally and unfairly compete with Meritage's trademark." As there was no diversity, the federal unfair competition count was the only basis for federal jurisdiction.

The same day it filed the complaint, Meritage also requested a temporary restraining order. (Doc. 1, 3) Meritage was ordered to serve copies of the request on Defendants by February 26, 2004 and Defendants were instructed to file a response by March 2, 2004. (Doc. 10) On March 1, 2004, Greg Hancock moved to dismiss the case based on lack of subject matter jurisdiction. (Doc. 18) Greg and Rick Hancock filed separate responses to the request for a temporary restraining order and Meritage opposed the motion to dismiss. (Doc. 19, 28) The request for a temporary restraining order was denied. (Doc. 42)

The case then proceeded, with both sides filing countless motions. Greg Hancock repeatedly attempted to have the case dismissed for lack of subject matter jurisdiction.[1] Also, in September 2004, Greg Hancock sued Meritage, its executive officers, and the law firm of Snell & Wilmer in Arizona state court. In January 2005, Meritage moved for summary judgment in this case regarding Greg Hancock's entitlement to earn-out payments for 2003 and 2004. (Doc. 103) According to Meritage, Greg Hancock's resignation led to additional charges that reduced the earn-out payment to zero. Meritage requested that if the Court determined there was some dispute about the proper amount of the earn-out payments, the matter should be referred to arbitration based on the Master Transaction Agreement's arbitration clause. Greg Hancock responded by arguing that Meritage had waived the right to arbitrate the earn-out amounts. (Doc. 111)

At a hearing held on March 11, 2005, the parties discussed with the Court the intended scope of discovery. Counsel for Greg Hancock was asked why he had filed the separate state court action. He responded that he "filed a state cause of action in the belief, and we still believe,

---

1. During a discovery dispute hearing held on March 25, 2005, counsel for Greg Hancock agreed that the motions to dismiss for lack of subject matter jurisdiction were moot. (Doc. 146) It is unclear why Greg Hancock continued to raise the issue in light of this concession.

there is no federal jurisdiction. There are statute of limitations issues." (Doc. 139 p. 50) When pressed on this issue, counsel reiterated his belief that the state cause of action was necessary because of statute of limitations issues. (*Id.*) The Court observed that the statute of limitations would almost certainly be tolled while the federal action was pending, but decided to resolve the issue at another hearing scheduled for a short time later. (*Id.* at p. 54)

At the next hearing, the Court again addressed the issue of subject matter jurisdiction. Counsel for Greg Hancock advised the Court that the state court action was not going to be dismissed "[b]ecause, when this case gets dismissed, as it ultimately will, I want to be a plaintiff in the state court, and I don't want to have to hop a whole bunch of numbers and delay two or three years to get back in court there." (Doc. 152 p. 10) When asked about the timing of discovery in the state case, Greg Hancock's counsel responded "it's the same discovery as in this case. *It's the very same case.*" (*Id.* emphasis added) On April 27, 2005, the Court ordered Greg Hancock to dismiss the suit pending in state court "with prejudice." (Doc. 157) On May 10, 2005, Greg Hancock filed a Petition for Writ of Prohibition and Mandamus with the Ninth Circuit. The petition asked the Ninth Circuit to prevent this Court from enforcing the April 27, 2005 Order requiring the dismissal of the state case. Later that month, Meritage sought an Order to Show Cause for Greg Hancock to explain why he did not comply with the April 27 Order. (Doc. 167) The Court amended the April 27 Order to allow Greg Hancock to dismiss the state cause of action "without prejudice." (Doc. 174) On August 10, 2005, the Ninth Circuit denied the petition. (Doc. 197)

After denial of the petition, Meritage renewed its request for an Order to Show Cause. (Doc. 200) In the response to the renewed request, Greg Hancock argued that the Order requiring him to dismiss his state cause of action was "illegal." (Doc. 205) The Court granted Meritage's request and set a hearing. (Doc. 219) In anticipation of that hearing, Greg Hancock claimed, for the first time, that the April 27, 2005 Order violated the Anti–Injunction Act, 28 U.S.C. § 2283. After the hearing, the Court issued a written Order finding that Greg Hancock's counsel had acted in bad faith. The Court ordered Greg Hancock's counsel to "pay monetary sanctions in the amount determined by this Court equaling the costs, expenses, and attorney's fees reasonably incurred by Plaintiff Meritage in its pursuit of Defendant's non-compliance with this Court's Dismissal Order." (Doc. 266) Meritage submitted a statement setting forth that it had incurred $15,799 due to Greg Hancock's failure to comply with the Order. Greg Hancock's counsel responded, and Meritage replied, arguing it had incurred an additional $3,500, for a total of $19,299. (Doc. 345) The Court eventually withdrew the Order requiring Greg Hancock to dismiss his state cause of action, but allowed the sanctions to remain in place. (Doc. 336)

On March 2, 2006, Rick Hancock sought leave to amend his complaint to include counterclaims. The Court granted leave and Rick Hancock filed his ten-count counterclaim against Meritage and a number of Meritage's employees. The ten counts include fraud, breach of fiduciary duty, negligent misrepresentation, and wrongful termination. (Doc. 337) Meritage moved to dismiss all of the counterclaims, primarily because of a general release Rick Hancock signed.

On May 26, 2006, Meritage filed a complaint in arbitration against Greg Hancock and others. The arbitration complaint contained multiple counts. All of the

counts were connected to home warranty payments that Meritage believed Greg Hancock should have paid. Greg Hancock filed an answer in arbitration. The answer alleged "that all elements of [Meritage's] complaint are claims which should have been brought and included in [Meritage's] complaint against Gregory S. Hancock in United States District Court, District of Arizona, Cause No. CIV 04–384–PHX–ROS, and that th[e] arbitration claim constitutes the splitting of causes of action, and unfairly subjects this defendant to a multiplicity of claims." (Doc. 334) Greg Hancock's answer also included a counterclaim that Meritage breached the parties' licensing agreements.

In July 2006, Meritage asked the Court to stay Greg Hancock's counterclaim in the arbitration. Meritage believed that "Greg Hancock's crossclaim in arbitration that Meritage breached the license agreement was and is a compulsory counterclaim to Meritage's claim that Defendant Greg Hancock breached the license agreement." Therefore, Meritage argued it was entitled to a stay of the counterclaim in arbitration pending resolution of this suit. Greg Hancock responded by requesting that the Court "let the arbitration proceed in its entirety," or stay both parties' claims in arbitration. (Doc. 334)

In December 2006, Meritage, Greg Hancock, and Rick Hancock each filed a motion for summary judgment. After instructing the parties to comply with the page limits required by Local Rule, the motions are now fully briefed.

## III. Analysis

This Order addresses the following issues. First, numerous issues involving the arbitration of claims are resolved. Second, a portion of Meritage's federal and state unfair competition claims is dismissed. Third, Meritage's summary judgment motion is addressed. Fourth, Greg Hancock's summary judgment motion is addressed. And fifth, Rick Hancock's summary judgment motion is addressed.

### A. Issues Involving Arbitration

There are three issues implicating arbitration. First, Meritage believes Greg Hancock should be forced to arbitrate any dispute regarding his entitlement to earn-out payments. (Doc. 103) Second, Meritage asks that the Court stay the counterclaim Greg Hancock raised in arbitration. (Doc. 334) And third, Greg Hancock asks the Court stay Meritage's arbitration of warranty claims.(Doc. 330)

#### 1. Legal Standard for Arbitration

The Federal Arbitration Act (FAA) creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The FAA applies to any "written provision in ... a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Pursuant to the FAA, arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also allows district courts to compel arbitration where necessary. 9 U.S.C. § 4. Similarly, a district court may enjoin a claim from being arbitrated where the arbitration clause is held not to apply. *See, e.g., Textile Unlimited, Inc. v. A. BMH and Co., Inc.*, 240 F.3d 781, 785–86 (9th Cir.2001) (affirming grant of preliminary injunction preventing arbitration). But a court is very limited in its power to refuse a motion to compel arbitration. As observed by the Supreme Court, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."

*Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (citing 9 U.S.C. §§ 3, 4). This is true even if to do so would require a "piecemeal resolution" of all outstanding issues. *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 19, 103 S.Ct. 927. Thus, "agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement." *Id.* Such grounds for revocation include "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). Waiver of the arbitration clause is also a possible defense. *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 25, 103 S.Ct. 927.

■ Pursuant to 9 U.S.C. § 3, the Court is required to stay proceedings pending arbitration if the Court determines that the issues involved are referable to arbitration under a written arbitration agreement. *Pearce v. E.F. Hutton Group, Inc.,* 828 F.2d 826, 830 (D.C.Cir.1987) (once a district court is satisfied that the issue before it is referable to arbitration, the court must, on application, stay the proceeding pending the arbitration). The Court also has discretion to dismiss, rather than stay, litigation as to any claim referable to arbitration. *See, e.g., Sparling v. Hoffman Constr. Co., Inc.,* 864 F.2d 635 (9th Cir.1988) (district courts have discre-

tion to dismiss cases in favor of arbitration under 9 U.S.C. § 3).

### 2. Meritage's Motion To Compel Arbitration of the Earn–Out Issue

■ Meritage seeks arbitration of the earn-out issue. Greg Hancock contends that Meritage waived its right to arbitration when it filed this litigation and failed to raise the issue prior to its Cross–Motion For Summary Judgment.[2] The Ninth Circuit has held that a party seeking to prove waiver of a right to arbitration must demonstrate: "(1) knowledge of an existing right to compel arbitration, and (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Hoffman Constr.ᐧ Co. of Oregon v. Active Erectors and Installers, Inc.,* 969 F.2d 796, 798 (9th Cir.1992) (quoting *Fisher v. A.G. Becker Paribas, Inc.,* 791 F.2d 691, 694 (9th Cir.1986)). The parties do not dispute that they were aware of an existing right to compel arbitration. Rather, the disagreement hinges on whether Meritage's actions are deemed consistent with its right to arbitration and whether Greg Hancock would be prejudiced.

Meritage argues that filing the underlying lawsuit did not indicate that the earn-out issue should be litigated here. Meritage believes that Greg Hancock first

**2.** In his supplemental brief, Greg Hancock disputes that the earn-out issue is subject to the arbitration clause contained in Exhibit I. (Doc. 172) Paragraph 2.5(f) of the MTA provides that "the Management Agreement, attached as Exhibit A to this Agreement, will apply to the Earn–Out Payments." The Management Agreement, which provides the formula by which the earn-outs are calculated, states at paragraph 6 that "any action at law or judicial proceeding instituted by either party relating to this Agreement shall be instituted only" in Arizona courts. Greg Hancock contends that this phrase represents an intent for the formula for earn-outs be decided in

court, despite the arbitration language contained in Exhibit I. Although the Management Agreement makes no reference to it, the Court finds that it is not at odds with the arbitration language of Exhibit I. Read together, Exhibit I provides for dispute resolution prior to filing suit in Arizona courts. Moreover, paragraph 2.5 of the MTA expressly requires arbitration for any dispute of the calculation of the earn-out payments, providing "[if] Greg Hancock disputes the calculation of the Earn–Out payment and the Buyers and Greg Hancock are unable to resolve that dispute, the parties will arbitrate the dispute in the manner provided in Exhibit I."

raised the earn-out issue in a counterclaim, "to which Meritage replied that no earn-out was due and the issue was an arbitrable one." (Doc. 168 p. 1) In addition, in a letter dated May 8, 2003, Meritage explicitly reserved the right and expressed its intent to arbitrate. The letter stated "Meritage ... reserve[s] the right and will mediate/arbitrate." Meritage specifically identified "the earn-out computation" as an issue it wished to arbitrate. (Doc. 168, Exh. 1) This right was reiterated after Meritage filed suit. In its Motion for a TRO, Meritage maintained,

> The obvious flaw in Defendant Greg Hancock's concoction is that the Master Transaction Agreement makes it clear that if Defendant Greg Hancock disputes the calculation of the earn-out payments, Meritage has to the end of March 2004 to provide him with an accounting. Then, if the parties cannot settle the amount of the earn-out, they agreed to settle any earn-out dispute by arbitration-not by a unilateral threat to terminate Meritage's exclusive license.

(Doc. 3, p. 6) These statements by Meritage are consistent with the position it has taken on arbitration of the earn-out in state court. (Doc. 168, p. 3, citing brief filed in Arizona Superior Court)

Meritage contends that these examples establish it has consistently preserved its right to arbitrate the earn-out claim. Meritage fails to mention, however, certain actions that were inconsistent with its belief regarding arbitration. Greg Hancock raised the earn-out issue in his counterclaims and Meritage sought dismissal of those counterclaims based on its right to arbitration. Meritage later retracted the portion of the motion to dismiss addressing the arbitrability of Greg Hancock's claims. (Doc. 287) Also, Meritage raised arbitration of the earn-out on summary judgment, but stated that it sought arbitration only in the event the court found a material issue of fact existed with regard

to that issue. (Doc. 103 p. 19) Meritage cannot attempt to litigate the issue here and then invoke its right to arbitrate if it is unsuccessful. Had Meritage intended to preserve its right to arbitrate the issue, it should not have sought summary judgment on the claim or, at the very least, sought to dismiss Greg Hancock's counterclaims that it believed were subject to arbitration. Meritage's actions were inconsistent with its right to arbitration.

■ In addition to proving acts inconsistent with arbitration, Greg Hancock must show that he would be prejudiced by now being forced to arbitrate the earn-out issue. *Hoffman Constr. Co. of Oregon,* 969 F.2d at 798; *Fisher,* 791 F.2d at 697. Greg Hancock cites to the fact that "[a]lmost 11 months ... elapsed between Meritage's instigation of this litigation and its mentioning of arbitration." Also, Greg Hancock "has spent tens of thousands of dollars engaging in theories and disputes that simply would not be present in arbitration." (Doc. 171, p. 6) The Court agrees that the time and money spent litigating the issue constitutes sufficient prejudice, and finds that Meritage has waived its right to arbitrate the earn-out issue. *See MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244, 249 (4th Cir.2001) ("A party may waive its right to insist on arbitration if the party so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.") (quotation omitted).

### 3. Motion To Stay Arbitration of Greg Hancock's Counterclaims

■ Meritage contends that the allegations supporting Greg Hancock's counterclaim in arbitration are the same allegations made in the instant litigation and constitute a compulsory counterclaim that he is barred from pursuing in that forum.

Meritage further contends that even if the claim is not a compulsory counterclaim, Greg Hancock waived his right to arbitrate that claim based on acts inconsistent with the right to arbitrate.

■■■■ Federal Rule of Civil Procedure 13(a) provides, in relevant part,

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence* that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. (emphasis added).

In order to determine whether a claim "arises out of the same transaction or occurrence" such that it is a compulsory counterclaim, a "liberal logical relationship test" is applied. *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir.1987). Under this test, the court must analyze "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* (citation and quotation omitted). The "transaction or occurrence" language is to be read broadly when resolving whether a claim is a compulsory counterclaim. *Id.* at 1252. Defendants who do not assert compulsory counterclaims are barred from raising those claims in subsequent litigation.

Meritage argues that since it filed its initial complaint two and a half years ago, Greg Hancock has repeatedly asserted as a defense that he terminated the license agreement due to Meritage's prior breach. (Doc. 127; Doc. 165) In addition, Meritage notes that Greg Hancock asserted abuse of process and malicious prosecution claims "that were expressly based on the fact Meritage, and not Hancock, was in breach of the license agreement." (Doc. 127)

These allegations are the same as the ones now made in arbitration. (Doc. 334, Exh. A, at p. 9–24) Greg Hancock counters that Meritage seeks to preclude Greg Hancock from bringing the same type of claims that Meritage has brought in arbitration. Greg Hancock points out that the MTA is a 52 page document that incorporates by reference eleven exhibits, including several agreements that "are involved in this litigation in one way or another," and states that if his claims are barred, then Meritage's warranty claims brought in arbitration, and any other claim arising under the MTA, should be barred as well. (Doc. 334, p. 3)

Additionally, Greg Hancock contends that the counterclaim alleged in arbitration was based on documents recently produced by Meritage in the litigation, including the "go dark" email by Meritage's CEO Steve Hilton which was not produced until late March 2006 and after the March 2, 2006 deadline for filing a motion for leave to add a counterclaim. However, the allegations supporting the counterclaim are the same as those raised as a defense in this litigation, and also support other claims that were filed here. Regardless of whether the "go dark" email was in existence or not, the fact remains that if Greg Hancock had sufficient evidence to raise as a defense that Meritage first breached the license agreement, then he had enough evidence to file the counterclaim. The allegations comprising the defenses raised in this litigation are virtually the same as those supporting the claims raised in arbitration. The fact that Greg Hancock raised Meritage's alleged breach of the license agreement as a defense in this case supports the Court's conclusion that the facts supporting Greg Hancock's counterclaim in arbitration arise out of the same transaction or occurrence as Meritage's claims such that his claim was a compulso-

ry counterclaim. *Pochiro,* 827 F.2d at 1249.

Contrary to Meritage's assertions, the fact that Greg Hancock is barred from raising this claim in subsequent litigation does not necessarily mean "that the claim is also barred from consideration in subsequent [a]rbitration proceedings." *Bristol Farmers Market & Auction Co. v. Arlen Realty & Dev. Corp.,* 589 F.2d 1214, 1220 (3d Cir.1978) (citing *Local 11, IBEW v. G.P. Thompson Elec., Inc.,* 363 F.2d 181, 184 (9th Cir.1966)). "The strong public policy in favor of arbitration supports this conclusion." *Bristol Farmers Market & Auction Co.,* 589 F.2d at 1220. In *Bristol,* the Third Circuit affirmed a district court's refusal to enjoin arbitration demanded under a lease agreement by the lessee on the basis that the issues were properly within the scope of the arbitration clause, were not barred by res judicata, and were not waived by the lessee's failure to assert them in prior legal actions. *See id.* In doing so, the Third Circuit noted that throughout the previous litigation, the lessee requested that the claim be withdrawn and submitted to arbitration and specifically refused to raise certain defenses, declaring instead its intention to do so in arbitration. *Id.* The court relied upon the Ninth Circuit's analysis in *Local 11, IBEW* that an issue that is a compulsory counterclaim under Rule 13, may be raised in subsequent arbitration proceedings. "If one of the disputing parties could, by filing a complaint alleging a grievance outside the scope of the agreement for arbitration, force his opponent to by-pass arbitration and assert counterclaims as to controversies otherwise arbitrable, the desired intent and purpose of arbitration agreements could be effectively frustrated." *Id.* (citing *Local 11, IBEW,* 363 F.2d at 185).

Unlike the aforementioned cases, however, Greg Hancock raised the same allegations in both forums and failed to preserve his right to arbitration. Unlike the defendant in *Bristol* who "steadfastly sought to arbitrate its claim," Greg Hancock has argued waiver by both parties of any claim arising under the MTA and did not preserve his right to arbitrate the breach of license agreement claim at the time he raised it as a defense. For these reasons, the Court will enjoin the arbitration of the Greg Hancock's counterclaim.

### 4. Motion To Stay Meritage's Warranty Claims

■ Greg Hancock argues that in the event the Court stays his counterclaim in arbitration, the Court should also stay Meritage's arbitration claims because they constitute a splitting of the cause of action. Greg Hancock further argues that the first time Meritage raised the issue of arbitration was in the cross-motion for summary judgment when it "cherry picked" the earn-out issue and pressed for arbitration of that issue. Meritage then filed its Second Amended Complaint on April 15, 2005 and omitted references to a warranty dispute. In sum, Greg Hancock argues that the facts and issues now raised in arbitration by Meritage all arose before Meritage filed its Second Amended Complaint, and all pertain to the ongoing MTA-related disputes between the parties.

■ The rule against splitting a cause of action generally requires "that all claims between the same parties arising out of or relating to the same transactional circumstances or core set of facts, or arising from a single wrong, or involving the same subject matter be joined in a single action." 1A C.J.S Actions § 229; *see also Haphey v. Linn County,* 924 F.2d 1512, 1517 (9th Cir.1991) ("The doctrine against splitting a single cause of action refers to the compulsion to pursue in one action all the theories and remedies which might be appropriate to a grievance.").

What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectation or business understanding or usage.

*Alyeska Pipeline Serv. Co. v. United States*, 231 Ct.Cl. 540, 688 F.2d 765 (Ct.Cl. 1982) (citations omitted). The Ninth Circuit has held:

There are various criteria for determining whether the same cause of action is involved in the two suits: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. "The crucial element underlying all of the standards is the factual predicate of the several claims asserted. For it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action. . . ."

*Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980) (citations omitted).

Meritage counters that the prohibition on splitting claims does not apply if the defendant acquiesces in the split. Meritage argues that Greg Hancock consented to arbitrate the warranty claims not only by signing the MTA, but also by failing to move to dismiss the arbitration and instead filing an answer. American Arbitration Association Rule 7(c) provides:

A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

In his answer in arbitration, Greg Hancock alleged:

[T]hat all elements of the complaint are claims which should have been brought and included in plaintiffs' complaint against Gregory S. Hancock in United States District Court, District of Arizona, Cause No. CIV 04–0384–PHX–ROS, and that this arbitration claim constitutes the splitting of causes of action, and unfairly subjects this defendant to a multiplicity of claims.

Answer to Complaint filed before AAA, § 8. Pursuant to AAA R–7, Greg Hancock properly objected to the arbitrator's jurisdiction over the claim. Thus, Greg Hancock has not acquiesced to the splitting of the claim.

Nonetheless, applying the factors set forth in *Harris*, the Court finds that the warranty claims do not arise out of the same transaction as the claims here. The MTA is a 52–page document comprising several agreements. It would be unreasonable to assume that by filing suit here, Meritage waived its right to arbitrate all disputes arising out of the MTA, regardless of their genesis. The claims brought in arbitration, namely breach of contract, injurious falsehood, and defamation, involve different wrongful acts and a different set of rights than those at issue in this litigation. Thus, the evidence with respect to both are different and involve interpretation of different agreements. As a result, there is no risk that the rights or interests that have been or will be established in this Court will be destroyed or impaired. For these reasons, the Court finds that the warranty claims should be allowed to proceed in arbitration.

## B. Meritage's Unfair Competition Claims

On April 20, 2007, the Court directed the parties to brief whether Meritage's federal and state unfair competition claims should be dismissed. Based on the applicable law, and the arguments by the parties, Meritage's unfair competition claims will be dismissed in part.

Meritage's first cause of action is a federal unfair competition claim. Meritage believes Defendants' actions "are likely to cause confusion or mistake or will deceive customers in interstate commerce as to the affiliation, connection, or association between Defendants' mark and Meritage's Hancock trademarks." (Doc. 159) In the supplemental briefing, Meritage admits that its unfair competition claim is based on "association confusion," false advertising, and trade dress. The parties have focused on the "association confusion" claim throughout this litigation. Prior to the supplemental briefing, Meritage never clearly articulated its false advertising and trade dress claims. There is no motion for summary judgment pending specifically addressing the false advertising and trade dress claims. Thus, those claims will be allowed to proceed.[3]

The "ultimate test" for unfair competition is likelihood of consumer confusion. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988). "Likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Shakey's Inc. v. Covalt*, 704 F.2d 426, 431 (9th Cir.1983).

According to Meritage, there is ample evidence of likelihood of confusion. This alleged confusion arose because Rick Hancock and Meritage both licensed and used the word "Hancock" at housing developments. This led consumers to believe that Rick Hancock Homes and Meritage were associated. (Doc. 478 "[C]onsumers dealing with Rick Hancock Homes' sales operation at Sundance believed they were dealing with Meritage.") The flaw in Meritage's argument is that Rick Hancock and Meritage *were* associated; Greg Hancock had licensed *both* Meritage and Rick Hancock to use the Hancock trademarks. Thus, the belief that Rick Hancock and Meritage are somehow associated is not confusion, it is an accurate understanding of the facts.[4] This Court joins other courts in finding that "a claim under § 1125(a) does not lie where there is no confusion about the ultimate source of the goods (interpreted to mean the owner of the mark), even though an exclusive licensee of the mark has a legitimate claim that its licensing agreement has been violated." *MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*, 10 F.Supp.2d 922, 928 (N.D.Ill.1998) (citing cases). In other words, "an exclusive licensee of a trademark can [not] state a claim under § 1125(a) when the owner of the mark has

---

**3.** Even were the Court to dismiss Meritage's federal unfair competition claim in its entirety, the Court would exercise supplemental jurisdiction over Meritage's remaining claims. *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir.2001) ("If the district court dismisses all federal claims on the merits, it has discretion under § 1367(c) to adjudicate the remaining claims; if the court dismisses for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims."). Accordingly, counsel for Greg Hancock need no longer raise the issue of subject matter jurisdiction.

**4.** In his declaration, Mario Atkins states that he "thought that the Rick Hancock Homes development was related to Hancock Communities." As pointed out, Rick Hancock Homes and Hancock Communities *were* related through their association with Greg Hancock.

authorized the use of the mark by the 'person' who is doing the alleged infringing." *Id.* at 927. Meritage's allegations of confusion fail for purposes of federal law.

Based on the lack of any actual consumer confusion, Meritage's state unfair competition claim addressed to "association confusion" must be dismissed as well. *See Taylor v. Quebedeaux*, 126 Ariz. 515, 617 P.2d 23, 24 (1980) ("The gravamen of the case before us is unfair competition and the essence of unfair competition is confusion of the public.").

### C. Meritage's Motion for Summary Judgment

Meritage seeks partial summary judgment regarding certain defenses argued by Greg Hancock as well as summary judgment regarding Rick Hancock's counterclaims.

### 1. Greg Hancock's Defenses

■ Meritage seeks a ruling that dismissal with prejudice of Greg Hancock's counterclaims bars certain affirmative defenses through operation of collateral estoppel. "Courts are granted broad discretion to apply the doctrine of collateral estoppel." *Disimone v. Browner*, 121 F.3d 1262, 1268 (9th Cir.1997). Based on the procedural history of this case, an application of collateral estoppel to prevent certain affirmative defenses would not be appropriate.

Meritage anticipated that collateral estoppel would not be applied and argued that certain defenses offered by Greg Hancock fail as a matter of law. Meritage seeks exceedingly specific statements regarding certain defenses offered by Greg Hancock. There are countless issues of material fact involved with Meritage's arguments and summary judgment will be denied. Greg Hancock will be allowed to present all the affirmative defenses for which he has factual support.

### 2. Rick Hancock's Counterclaims

■ Meritage filed a Motion to Dismiss all of Rick Hancock's counterclaims. (Doc. 364) Meritage later filed a Motion for Summary Judgment, reiterating many of the arguments presented in the Motion to Dismiss. (Doc. 411) The Motion to Dismiss will be denied as moot and the Motion for Summary Judgment will be granted.

On November 21, 2003, Rick and Brenda Hancock offered to buy a Meritage home in the Madrid community. The offer reflected a purchase price of $723,900, a "lot premium" of $45,000 and a deduction of ten-percent as an "employee discount." Rick Hancock was terminated on December 2, 2003. The offer was allegedly accepted on December 8, 2003. On December 9, 2003, a Meritage official cancelled the contract. (The parties dispute the exact date of the cancellation, but there is no dispute that the contract was cancelled.) On December 22, 2003, Rick Hancock and Meritage entered into a severance agreement. That agreement provided that in return for receiving $160,000, Rick Hancock agreed "to waive and release all of [his] existing and potential claims for relief or compensation from [Meritage] and its agents, employees, owners, and [Meritage's] parents, subsidiaries, and affiliates, including all claims that arise from [his] employment or the termination or resignation of [his] employment with [Meritage]." (Doc. 337 Ex. 4) On January 13, 2004, Rick Hancock wrote to Meritage to "further confirm" that the "release dated December 22, 2003 covers my proposed purchase contract on [the] home in the Madrid project. To be more specific, I agree that the contract has been cancelled and my deposit returned, and that neither of us will have any further liability to the other in respect of this contract." (Doc. 412 Ex. 12)

It is undisputed that all of Rick Hancock's counterclaims arose prior to his execution of the severance agreement. Meritage believes it is entitled to summary judgment on all of the counterclaims because Rick Hancock expressly waived and released all of his claims against Meritage when he signed the severance agreement. Rick Hancock attempts to avoid this conclusion by arguing that the release "was induced by fraudulent pretenses and material omissions." (Doc. 401 p. 5) Specifically, Rick Hancock cites two misrepresentations as the basis for his fraudulent inducement claim. First, he claims Meritage failed to disclose that the Madrid home contract had been executed. Second, he claims Meritage falsely informed the Hancocks that the Madrid home contract had been cancelled.

 A claim of fraudulent inducement requires "proof of all nine of the elements of actionable fraud." *Lundy v. Airtouch Comm., Inc.*, 81 F.Supp.2d 962, 968 (D.Ariz.1999). The nine elements are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the listener's reliance on its truth; (8) the right to rely on it; and (9) his consequent and proximate injury. *Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 803 P.2d 900, 905 (1990). Meritage argues that Rick Hancock has not provided any evidence that he relied on Meritage's failure to disclose that the contract had been executed. Meritage also argues that its statements that the contract had been cancelled were not false

and therefore can not serve as the basis for a fraudulent inducement claim.

### a. Failure to Disclose

 "Where the defendant has a legal or equitable obligation to reveal material information, his failure to do so is equivalent to a misrepresentation and may therefore support a claim of actionable fraud where the remaining elements of that tort are proved." *Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 5 P.3d 940, 944 (Ariz.App. 2000). Meritage's motion argues that even if the Court accepts that Meritage had a duty to disclose the allegedly executed contract, Rick Hancock has not provided any evidence that he relied upon that failure to disclose when executing the release. Rick Hancock's January 13, 2004 letter establishes he was aware the contract had been cancelled. Implicit in that letter is Rick Hancock's acknowledgment that he knew the contract had been executed. *See Black's Law Dictionary* 218 (8th ed.2004) (defining "cancel" as "[t]o terminate a promise, obligation, or right <the parties canceled the contract>"). Reliance is a required element of a fraudulent inducement claim and Rick Hancock failed to show he relied on the failure to disclose. Thus, summary judgment will be granted in Meritage's favor on Rick Hancock's fraudulent inducement claim based on the failure to disclose.[5]

### b. Statement that Contract Cancelled

 Rick Hancock also claims that Meritage made a false statement when it claimed that the contract had been cancelled. This claim is strange in light of Rick Hancock's acknowledgment in the January 13, 2004 letter that the contract

---

5. Rick Hancock maintains that in evaluating Meritage's summary judgment motion, "the allegations in the [unverified] complaint [should be] taken as true." (Doc. 429) This is not a correct statement of the law at the summary judgment stage.

had been cancelled. As of January 2004, both parties believed the contract had been cancelled. Thus, Meritage's statement that the contract had been cancelled was true. A true statement cannot form the basis for a fraudulent inducement claim and Meritage is entitled to summary judgment on this claim as well.

Rick Hancock has failed to show any genuine issue of material fact exists regarding the release being fraudulently procured. Because the release is valid, all of Rick Hancock's counterclaims are barred by the release and Meritage is entitled to summary judgment on all of Rick Hancock's counterclaims.

### D. Greg Hancock's Motion for Summary Judgment

Greg Hancock's Motion for Summary Judgment includes arguments addressing which party breached certain agreements first as well as the claim that Greg Hancock has not violated any contractual or common law duty to Meritage.

#### 1. Breach of the Agreement

■ Greg Hancock asserts that Meritage failed to make an earn-out accounting and payment as required by the parties' agreement. Thus, Greg Hancock believes he was entitled to terminate the parties' agreement based on this failure. Meritage claims that no earn-out was due and the accounting was timely provided. There is a genuine issue of material fact whether Greg Hancock was entitled to an earn-out payment. Summary judgment will be denied.

#### 2. Breach of Contractual or Common Law Duties

■ Greg Hancock claims that Meritage has no evidence "that Greg Hancock invested in, counseled, advised or otherwise assisted Rick Hancock in his home building enterprise." (Doc. 414 p. 6) Dur-

ing his deposition, Rick Hancock stated that Greg Hancock licensed the Hancock marks to him for use in his homebuilding enterprises. Therefore, there is at least a genuine issue of material fact regarding Greg Hancock's assistance of Rick Hancock. Whether Greg Hancock's actions violated any contractual or common law duties will be decided at trial. Summary judgment will be denied.

### E. Rick Hancock's Motion for Summary Judgment

The majority of Rick Hancock's Motion for Summary Judgment is aimed at the unfair competition counts already discussed. But Rick Hancock has also moved for summary judgment on many of Meritage's remaining counts.

#### 1. Breach of Fiduciary Duty

■ Rick Hancock argues that he could not have breached any fiduciary duty after he was terminated on December 2, 2003 because after his termination he had no duties to Meritage. Meritage claims that "fiduciary duties extend to former officers." (Doc. 470 p. 13) Meritage cites no Arizona law in support of this claim, and even the Illinois law cited by Meritage does not support a claim against a *former* officer for breach of fiduciary duty if the breach did not begin while the officer was employed by the company. *E.J. McKernan Co. v. Gregory,* 252 Ill.App.3d 514, 191 Ill.Dec. 391, 623 N.E.2d 981 (1993) (citing *Dangeles v. Muhlenfeld,* 191 Ill.App.3d 791, 138 Ill.Dec. 815, 548 N.E.2d 45 (1989)). Thus, Rick Hancock is entitled to summary judgment to the extent that Meritage is alleging he breached his fiduciary duties *after* he was terminated. This ruling does not prevent Meritage from offering evidence that Rick Hancock breached his fiduciary duties prior to his December 2, 2003 termination.

### 2. Misappropriation of Trade Secrets

 Rick Hancock believes Meritage has failed to produce any specific evidence of trade secrets he misappropriated. When Meritage's Chief Financial Officer was asked "[w]hat trade secrets were misappropriated by Rick Hancock?" he responded "I don't know." (Doc. 417 p. 14) The Chief Financial Officer also admitted that Rick Hancock could "engage in the homebuilding business without having to appropriate trade secrets from Meritage." (Doc. 417 p. 14) Based on this testimony, Rick Hancock believes he is entitled to summary judgment on the trade secret count.

Meritage responds that because of Rick Hancock's homebuilding business, "use and disclosure of Meritage's trade secrets was and continues to be inevitable and violate Arizona law." (Doc. 470 p. 14) Meritage does not cite to any specific evidence that Rick Hancock used or disclosed any of Meritage's trade secrets. Based on the testimony of the Chief Financial Officer, the burden was on Meritage to provide evidence that Rick Hancock had misappropriated trade secrets. Meritage's conclusory statement that misappropriation of trade secrets was inevitable is insufficient and Rick Hancock is entitled to summary judgment on this count. *See Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir.2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment.").

### 3. Intentional Interference with Prospective Contractual Advantage

Rick Hancock claims Meritage does not have any evidence that he interfered with any valid contractual relationship or business expectancy. Meritage states that "[t]he heart of [the] tortious interference claim is that Defendants have intentionally used the Hancock mark thereby interfering with Meritage's exclusive use of it and otherwise blocking Meritage from growing its business." (Doc. 470 p. 15) Meritage has not cited any specific contracts Rick Hancock interfered with. Meritage merely asserts that Rick Hancock "usurped business opportunities and goodwill belonging to Meritage with current and prospective customers and business expectancies." (*Id.*) This conclusory statement is insufficient to defeat the motion for summary judgment on this count. *Id.*

### 4. Unjust Enrichment

Meritage asserted an unjust enrichment claim against Rick Hancock based on his usurpation of "Meritage's exclusive license to the Hancock trade names, trade secrets, proprietary information, revenues and other property rights belonging to Meritage." (Doc. 159 p. 20) Rick Hancock argues he is entitled to summary judgment on this count because a valid unjust enrichment claim requires that the party have no remedy provided by law. *City of Sierra Vista v. Cochise Enter., Inc.*, 144 Ariz. 375, 697 P.2d 1125, 1131 (Ariz.App.1984). According to the Motion for Summary Judgment, Meritage has "a remedy at law for violations of trade names: The Lanham Act and the Arizona Trademark Act." After recent supplemental briefing ordered by the Court, Rick Hancock now believes that Meritage *does not* have any valid Lanham Act claim. Thus, according to Rick Hancock, Meritage does not have a remedy at law. The unjust enrichment claim will be allowed to proceed.

### 5. Conversion

Rick Hancock claims that "[c]onversion is not available as a cause of action in this case." (Doc. 417 p. 16) Rick Hancock provides no analysis of this issue and this count will be allowed to proceed.

### 6. Breach of Contract and Breach of Implied Covenant of Good Faith

██ Rick Hancock claims that Meritage has admitted that there has been no breach of contract. The Chief Financial Officer of Meritage stated during his deposition that he did not believe Rick Hancock breached any contracts. In response, Meritage cites to evidence that Rick Hancock violated the non-solicitation provision of his employment agreement by soliciting numerous Meritage employees. It is not clear if this non-solicitation provision applied to the alleged actions of Rick Hancock after he left Meritage. Without knowing if the non-solicitation provision applied at the relevant time, the Court cannot grant Rick Hancock's summary judgment motion.

Rick Hancock also claims that he could not have breached any implied covenant of good faith and fair dealing because he never breached any contract. If his solicitations of Meritage employees violated his employment agreement, Rick Hancock may also have violated the covenant of good faith and fair dealing. Summary judgment will be denied on this count.

### 7. Intentional Interference with License Agreement

According to Meritage's complaint, Rick Hancock "induced, procured, conspired, aided and abetted others not to perform pursuant to the License Agreement, thereby causing its breach and termination." (Doc. 159 p. 25–26) Rick Hancock claims that there is no evidence he "had anything to do with the termination of the License Agreement." Meritage does not cite to any evidence implicating Rick Hancock in Greg Hancock's attempt to terminate the license agreement. Rick Hancock is entitled to summary judgment on this count.

### F. Motion for Reconsideration and Motion to Supplement

██ Meritage sought leave to supplement its statement of facts long after the original deadline for the submission of documents. The Court denied Meritage's request and Meritage seeks reconsideration of that Order. Meritage claims that Rule 56(c) allows the adverse party to file opposing affidavits any time prior to the day of hearing. The Ninth Circuit squarely rejected this argument many years ago. *Marshall v. Gates*, 44 F.3d 722, 725 (9th Cir.1995) (Rule 56(c) "does not unconditionally require a district court to accept affidavits up to the date set for hearing on the motion for summary judgment."). The Motion for Reconsideration will be denied.

Third party defendant Scott Keefe seeks leave to supplement his statement of facts. This motion, originally docketed as filed by Meritage, references an "Exhibit 1." No such exhibit was attached to the filing. Meritage has previously been warned "to exercise more care when filing documents." The Court will strike all future documents that are filed incorrectly and will consider imposing more serious sanctions. The motion will be denied based on the failure to include Exhibit 1 in the filing.

### G. Entitlement to Costs

Finally, counsel for Meritage seeks to recover the costs from Greg Hancock's counsel that the Court has ordered. The Court will defer ruling on this issue until the trial has concluded.

Accordingly,

**IT IS ORDERED** Meritage's Motion To Arbitrate the Earn–Out Issue (Doc. 103) is **DENIED.**

**IT IS FURTHER ORDERED** Meritage's Motion To Stay Arbitration of Issue

Raised in This Court (Doc. 330) is **GRANTED.**

**IT IS FURTHER ORDERED** that Greg Hancock's Motion To Stay Warranty Claims (Doc. 334) is **DENIED.**

**IT IS FURTHER ORDERED** the Motion to Dismiss (Doc. 364) is **DENIED** as moot.

**IT IS FURTHER ORDERED** Meritage's Motion for Summary Judgment (Doc. 411) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** Greg Hancock's Motion for Summary Judgment (Doc. 413, 414) is **DENIED.**

**IT IS FURTHER ORDERED** Rick Hancock's Motion for Summary Judgment (Doc. 417) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** the Motions to Strike (Doc. 446, 467) are **DENIED.**

**IT IS FURTHER ORDERED** the Motion for Reconsideration (Doc. 497) is **DENIED.**

**IT IS FURTHER ORDERED** the Motions to Supplement (Doc. 500, 502) are **DENIED.**

**IT IS FURTHER ORDERED** the parties shall submit the Joint Proposed Pretrial Order and all other required pretrial documents by August 31, 2007.

**IT IS FURTHER ORDERED** a Final Pretrial Conference is set for September 21, 2007 at 1:30 p.m.

**IT IS FURTHER ORDERED** the trial is set for October 16, 2007 at 8:30 a.m.

**IT IS FURTHER ORDERED** changes to this schedule will not be granted absent exceptional circumstances.

**IT IS FURTHER ORDERED** all claims and issues not specifically ad-

dressed by this Order will be dealt with at trial.